IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Gary M. and Garyonna M., minors, by and through their next friends, April Zealous and Gary McDaniel, and April Zealous and Gary McDaniel,<br><br>Plaintiffs,<br><br>vs.<br><br>City of North Charleston, Officer Bradley Woods, Captain Scott Perry, Sergeant Charity Prosser, Deputy Chief Coyle Kinard, Detective Karen MacDonald, Lieutenant Wade Humphries, Lieutenant Bowman, Sergeant Rob Kruger, Sergeant Skip Allen, MPO Winston Williams, PFC Clarence Habersham, PFC Christopher Gorman, PFC Charles Champion, PCC Justin Fogle, PFC Jeremy Stevens, and PFC Joshua Quick,<br><br>Defendants. | No. 2:16-cv-01087-DCN<br><br><br><br><br>ORDER |

This matter is before the court on United States Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 32, that the court grant in part and deny in part defendants' motion for partial summary judgment, ECF No. 25. For the reasons set forth below, the court adopts in part and rejects in part the R&R and grants in part and denies in part defendants' motion for partial summary judgment.

**I. BACKGROUND**

Plaintiffs Gary M. and Garyonna M., minors, by and through their next friends, April Zealous and Gary McDaniel, (the "children"), Gary McDaniel ("McDaniel"), and

1

April Zealous ("Zealous")[1] (collectively, "plaintiffs") bring this action against the above-captioned defendants under 42 U.S.C. § 1983 for the alleged excessive or unnecessary destruction of property in the course of a search as secured by the Fourth and Fourteenth Amendments and a state law claim for negligence and gross negligence solely against the City of North Charleston. This matter is before the court on defendants' motion for partial summary judgment. Specifically, defendants move for partial summary judgment on the following grounds: (1) defendants deny any constitutional violation and assert that they are entitled to summary judgment on the federal cause of action; (2) individual defendants are entitled to summary judgment on the state law claim for negligence/gross negligence; and (3) defendants are entitled to summary judgment for all claims asserted on behalf of the children. Mem. in Supp. of Mot. for Summ. J. 2.

### A. Factual Allegations

The R&R ably recites the relevant facts, and it is unnecessary to review the details of the complaint, incident report, and depositions that constitute the factual record to this point. In short, on April 3, 2013, defendant Officer Bradley Woods ("Woods") conducted a traffic stop of a vehicle, which led to a chase that ended with the driver crashing his car and fleeing on foot. Incident Report, ECF No. 25-2. Defendant Sergeant Charity Prosser ("Prosser"), who was Woods's supervisor, obtained information from the driver's vehicle that it belonged to Jason Drayton (the "suspect") with the address of 1801 English Street, Apartment 5. Id.

A K-9 unit tracked the suspect to 1801 English Street, Apartment 5. Id. In addition to receiving consent from the occupant of Apartment 5, a warrant was obtained

---

[1] On December 13, 2014, April Zealous married McDaniel, and she is now known as April McDaniel. Zealous Dep. 4:5–11, 23–25, ECF No. 25-5. However, in the instant order, the court refers to her as "Zealous."

to search it. Johnson Dep. 30:6–8, ECF No. 25-11. Thereafter, an officer went to Apartment 6, which was occupied by Zealous, McDaniel, and four children, and received confirmation that Apartment 6 shared a common attic space with Apartment 5. Zealous Dep. 27:24–28:1, 76:16–19. In response to Lieutenant Tammy Lynn Sad's ("Sad") request to search plaintiffs' attic, Zealous and McDaniel consented. Id. at 28:2–4, 31:5–11; Sad Dep. 14:6–13, ECF No. 25-7.

At approximately 2:00 a.m., defendant Captain Scott Perry ("Perry"), the Commander of the Special Weapons and Tactics Team ("SWAT"), received a call from dispatch that they needed to come to the English Street address. Perry Dep. 11:10–20, ECF No. 25-9. The SWAT team of eleven officers—defendants Lieutenant Wade Humphries ("Humphries"), Lieutenant Bowman ("Bowman"), Sergeant Rob Kruger ("Kruger"), Sergeant Skip Allen ("Allen"), MPO Winston Williams ("Williams"), PFC Clarence Habersham ("Habersham"), PFC Christopher Gorman ("Gorman"), PFC Charles Champion ("Champion"), PCC Justin Fogle ("Fogle"), PFC Jeremy Stevens ("Stevens"), and PFC Joshua Quick ("Quick") (collectively, the "SWAT team")—arrived at the scene. Id. at 12:9–19, 13:4–8. Before they entered the apartments or conducted the search, Zealous, McDaniel, and the four children moved from Apartment 6 to another apartment downstairs. Zealous Dep. 33:21–25; McDaniel Dep. 31:11–13. Thereafter, the SWAT team entered Apartments 5 and 6, some entering Apartment 5 and others entering Apartment 6. Perry Dep. 47:12–17.

After the SWAT team completed its sweep and search of the apartments, they cleared the scene. Perry Dep. 34:1–20. At this time, plaintiffs returned to their apartment, claiming that it had been "ransacked and a multitude of personal property

3

items were unnecessarily destroyed and/or damaged."[2] Am. Compl. ¶ 11, ECF No. 1-1. Sad and defendant Deputy Chief Coyle Kinard ("Kinard") observed the condition of the apartment and were upset. Thereafter, Kinard told Perry to prepare a search warrant for Apartment 6, so that plaintiffs would have some type of documentation that the officers had been there. Kinard Dep. 18:2–11, 23:8–13, ECF No. 25-10; Perry Dep. 21:1-2.

**B. Procedural History**

The magistrate judge's R&R recommends the following disposition of defendants' motion for partial summary judgment: (1) grant as to Perry, Humphries, Bowman, Allen, Williams, Gorman, Champion, Fogle, Stevens, Quick, Woods, Prosser, MacDonald, Kinard, and the City of North Charleston with respect to the § 1983 claim; (2) deny as to defendants Kruger and Habersham;[3] and deny as to the state law claims brought against the individual defendants as no such claims are alleged. Both parties filed timely objections to the R&R, ECF Nos. 33 and 34, to which both parties filed responses thereto, ECF Nos. 35 and 36. The matter is now ripe for the court's review.

---

[2] The parties dispute the amount of damage. Zealous testified that their laptops, a picture, their sofa, their television, their washing machine, their bed and bedframe, McDaniel's CPAP machine, and the wooden frame surrounding the attic door were broken. Zealous Dep. 47:23–48:18, 55:7–8, 56:20–21. McDaniel testified that, in addition to the items listed by Zealous, the legs had been broken off their coffee table, the base to their swivel chair was broken, there was glass all over the floor, the bedframe in the children's bedroom was broken, and drawers in the house had been searched and left open. McDaniel Dep. 39:19–40:1–6, 41:5–19, 45:25–46:4. However, Sad testified that the apartment "looked a little disheveled[,]" but the only broken item she saw was a picture frame. Sad Dep. 21:11–12.

[3] In the conclusion of the R&R, the magistrate judge recommends that the motion be "**DENIED** as to . . . Humphries. R&R at 24 (emphasis added). Clearly, based on the previous sentence of the conclusion and the body of the R&R, the magistrate judge inadvertently listed Humphries instead of Habersham. Notably, the parties do not take issue with the magistrate judge's mistake. Their objections show that they understand that the R&R recommends denial of summary judgment with respect to Habersham, not Humphries.

4

## II. STANDARDS OF REVIEW

This court is charged with conducting a de novo review of any portion of the R&R to which specific, written objections are made, and "may accept, reject, or modify, in whole or in part," the recommendations contained therein. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). A party's failure to object may be treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Id. at 255 (citation omitted).

"The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact." Major v. Greenville Hous. Auth., No. 6:12- 183-GRA-KFM, 2012 WL 3000680, at *1 (D.S.C. Apr. 11, 2012), adopted in 2012 WL 3000676 (D.S.C. July 23, 2012) (citation omitted).

Nevertheless, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The plain language of Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[C]onclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion." Major, 2012 WL 2000680, at *1 (citation omitted).

### III. PLAINTIFFS' OBJECTION TO THE R&R

Plaintiffs assert that the magistrate judge improperly recommends that Perry, Humphries, Bowman, Allen, Williams, Gorman, Champion, Fogle, Stevens, and Quick are entitled to summary judgment. Pls.' Objs. 1. The magistrate judge recommends that these ten SWAT team members are entitled to summary judgment, finding no evidence that they entered plaintiffs' apartment. Id. However, plaintiffs contend that each of these defendants entered their apartment, citing three statements from Perry's deposition and affidavits of McDaniel and Zealous dated August 17, 2017, to support their argument. Id. at 1–3.

In an attempt to avoid summary judgment, plaintiffs submitted affidavits from Zealous and McDaniel as exhibits to their objections to the R&R, averring that they saw "the entire SWAT team enter [their] apartment." McDaniel Aff. ¶ 4, ECF No. 33-1; Zealous Aff. ¶ 5, ECF No. 33-2. However, their affidavits contradict their own deposition testimony, wherein they testified they were unable to see the SWAT team

6

enter their apartment. McDaniel Dep. 35:10–15; Zealous Dep. 75:11–16. It is well-settled that "a party cannot create a triable issue in opposition to summary judgment simply by contradicting his deposition testimony with a subsequent affidavit." Hernandez v. Trawler Miss Vertie Mae, Inc., 187 F.3d 432, 438 (4th Cir. 1999) (citation omitted); see also Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 975 (4th Cir. 1990) (holding where an affidavit contradicts a witness's prior testimony, "the affidavit should be disregarded as a sham issue of fact"); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) (citations omitted) ("If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact. A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."). Moreover, "[a]ttempts to introduce new evidence after the magistrate judge has acted are disfavored[.]" Newkirk v. Enzor, 240 F. Supp. 3d 426, 431 (D.S.C. 2017) (citation omitted). Therefore, the court declines to entertain these affidavits.

Plaintiffs correctly contend that "'a party opposing summary judgment is entitled to all reasonable inferences in its favor, [and] an inference is only reasonable if it is plausible and the evidence is such that a rational jury, given the entire record, could draw that inference.'" Pls.' Objs. 3 (quoting Benekritis v. Johnson, 882 F. Supp. 521, 528 (D.S.C. 1995)). However, the court finds that the excerpts taken from Perry's depositions fail to present a genuine issue of fact concerning which SWAT team members entered Apartment 6. Throughout the record, including Perry's statements cited by plaintiffs, the evidence shows that Kruger and Habersham were the only SWAT team members that

entered Apartment 6.[4]  See Perry Dep. 47:18–25, 51:17–52:18 (testifying Habersham and Kruger were the only officers to enter Apartment 6); Zealous Dep. 75:11–16 (testifying she was unaware of how many officers entered Apartment 6); McDaniel Dep. 35:10–15 (testifying he did not see the officers enter his apartment). Therefore, after a thorough review of the pleadings and the evidence before the court, taken in a light most favorable to plaintiffs, the court agrees with the magistrate judge that there is no evidence to support plaintiffs' argument that these ten SWAT team members entered their apartment. Because plaintiffs fail to present facts sufficient to create a triable issue of material fact with respect to Perry, Humphries, Bowman, Allen, Williams, Gorman, Champion, Fogle, Stevens, and Quick, the court finds this objection lacks merit and holds they are entitled to summary judgment.

## IV. DEFENDANTS' OBJECTIONS TO THE R&R

Defendants[5] list two objections to the R&R. Specifically, defendants assert that the magistrate judge improperly recommends denial of summary judgment: (1) with respect to Kruger and Habersham based on her finding that there are questions of fact as to whether they violated plaintiffs' constitutional rights while conducting the search in Apartment 6; and (2) with respect to the children based on her finding that the record is unclear as to whether any of the property destroyed during the search belonged to the

---

[4] Plaintiffs reference an excerpt of Perry's deposition, wherein he testified, "I do not know if all 11 went into the apartment. I know that they go into all kinds of areas." Perry Dep. 17:17–19. However, this statement does not confirm that all SWAT team members entered Apartment 6, and it is not supported by the record as whole, specifically, the remainder of Perry's testimony wherein he consistently testified that Kruger and Habersham were the only officers to enter Apartment 6. See id. at 47:18–25, 51:17–52:18.

[5] Defendants City of North Charleston, Kruger, and Habersham are the only defendants submitting objections to the R&R. Therefore, this section of the order will refer to them collectively as defendants.

8

children and because the adult plaintiffs testified that the children saw the officers in the house. Defs.' Objs. 1, 4–6.

### A. Kruger and Habersham

Defendants claim that Kruger and Habersham are entitled to summary judgment and qualified immunity as there is no evidence that either of them actually caused any intentional damage. Id. at 2–3. Specifically, defendants contend that the magistrate judge: (1) failed to address Daniels v. Williams, 474 U.S. 327 (1986), wherein the Supreme Court held that negligence in the loss or destruction of property is not actionable as a deprivation of property under the Constitution and § 1983; (2) failed to consider the fact that there is an adequate remedy under state law to compensate plaintiffs for negligent property damage through the South Carolina Tort Claims Act; and (3) incorrectly concluded that plaintiffs "'provided evidence through their testimony that damage was done to areas where a person could not possibly be hiding.'" Defs.' Objs. 2.

The United States Supreme Court has recognized that "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." United States v. Ramirez, 523 U.S. 65, 71 (1998). Destruction of property does not necessarily violate the Fourth Amendment; for instance, "officers executing search warrants on occasion must damage property in order to perform their duty." Dalia v. United States, 441 U.S. 238, 258 (1979) (citations omitted). "The touchstone, however, is reasonableness; destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment." Tarpley v. Greene, 684 F.2d 1, 9 (D.C. Cir. 1982). Importantly, a "plaintiff has no cause of action under § 1983 for the alleged negligent conduct of defendants which could have resulted

9

in the destruction or deprivation of his personal property." Ferrell v. Lewis, NO. 5:12-CT-3220-F, 2013 WL 12114471, at *2 (E.D.N.C. Apr. 9, 2013) (citing McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir. 1986)).

As stated above, defendants contend that Kruger and Habersham are entitled to summary judgment because there is no evidence that they caused any intentional damage. Defs.' Objs. 2–3. However, in viewing the evidence in the light most favorable to plaintiffs and drawing all justifiable inferences in their favor, the court finds that it is not in the position to rule out the possibility that Kruger's and Habersham's actions were more than negligent conduct based on the extent of damage alleged, the scope of the search and sweep, the fact that plaintiffs did not specifically allege or contend that the damage was caused by Habersham's and Kruger's mere negligence, and the record as whole. For example, Zealous testified that the SWAT team "actually kicked the TV, and the TV is broken and cracked on the inside[,]" Zealous Dep. 48:24–25, and McDaniel testified the legs were broken off the coffee table and that he did not understand how defendants broke the base of the swivel chair, McDaniel Dep. 41:7–17. Therefore, the court finds that defendants' objection concerning lack of evidence of intentional damage has no merit. Furthermore, the court disagrees with defendants' contention that plaintiffs failed to provide evidence that their property was damaged in areas where the suspect could not have been hiding. See e.g., McDaniel Dep. 35:9–11 (testifying "[t]hey were searching under beds where you couldn't even—where a person couldn't even get under the bed"). In sum, this objection lacks merit, and the court agrees with the magistrate judge and finds that Habersham and Kruger are not entitled to summary judgment because the record provides sufficient evidence that the property could have been unreasonably damaged.

### B. Children's Claims

Next, defendants claim that they are entitled to summary judgment on the children's claims. Defs.' Objs. 4–6. Defendants note that the magistrate judge recommends denial of summary judgment with respect to the children's claims based on her finding that it is unclear whether they had any interest in the damaged property and because McDaniel and Zealous testified that the children saw police in their home. Id. After a thorough review of the record, the court finds that plaintiffs have failed to set forth any facts showing that the children owned any of the damaged items.

In addition to claiming that personal property items were unnecessarily destroyed and damaged, plaintiffs claim that "the entire family was traumatized and terrorized by the conduct of the Defendants[.]" Am. Compl. ¶ 11. Under plaintiffs' negligence/gross negligence claim, plaintiffs allege that the City of North Charleston's actions caused the children to suffer emotional distress. Am. Compl. ¶¶ 20–21. However, it is undisputed that the children did not have direct contact with the officers, did not observe the search, and according to testimony concerning their counseling and medical records, any emotional distress did not result from the officers' actions. Furthermore, it is unclear whether plaintiffs' amended complaint intends to set forth a claim for intentional infliction of emotional harm, in addition to the negligence/gross negligence claim, under its second cause of action. A claim for intentional infliction of emotional harm is barred by the South Carolina Tort Claims Act. S.C. Code § 15-78-30(f).

Therefore, even when viewing the evidence in the light most favorable to plaintiffs and drawing all justifiable inferences in their favor, the court finds that defendants are entitled to summary judgment on all causes of action brought on behalf of the children.

## IV. CONCLUSION

For the reasons set forth above, the court **ADOPTS IN PART AND REJECTS IN PART** the magistrate judge's R&R, ECF No. 32. The court **GRANTS IN PART AND DENIES IN PART** defendants' motion for partial summary judgment, ECF No. 25, **GRANTING** it with respect to plaintiffs' § 1983 claim against Perry, Humphries, Bowman, Allen, Williams, Gorman, Champion, Fogle, Stevens, Quick, Woods, Prosser, MacDonald, Kinard, and the City of North Charleston, **GRANTING** it with respect to all causes of action brought on behalf of the children, **DENYING** it with respect to plaintiffs' claims against Kruger and Habersham, and **DENYING** it with respect to plaintiffs' state law claims against the individual defendants as no such claims are alleged. Accordingly, the remaining causes of action in this case are Zealous and McDaniel's: (1) § 1983 claim against Kruger and Habersham; and (2) state law claims against the City of North Charleston.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**September 25, 2017**
**Charleston, South Carolina**